**AIR & PUMP CO.**

v.

**Albert C. ALMAQUER and International Pollution Control, Inc.**

No. 1614.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 26, 1980.

Rehearing Denied Dec. 18, 1980.

Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellant.

Robert J. Patterson, B. Mills Latham, Law Offices of Latham & Patterson, Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a products liability case. The plaintiff, Albert C. Almaquer, who was an employee of International Pollution Control, Inc. (hereinafter called IPC), was injured when a pump connected to defendant Air & Pump Company's rented compressor exploded. The jury found that Air & Pump's compressor was defective at the time it was delivered to plaintiff's employer, IPC, and that such condition was a producing cause of Almaquer's injuries. Air & Pump joined IPC asserting the negligence of IPC as being the cause of the accident and plaintiff's injuries. At the conclusion of the evidence, the trial court instructed a verdict in favor of IPC as to the damages claimed by plaintiff. Air & Pump appeals.

Air & Pump's appeal involves a three-pronged attack on the instructed verdict for IPC and the judgment for Almaquer. In points of error six and seven, appellant Air & Pump contends that the jury finding that the air compressor in question was defective at the time it was delivered to IPC is not supported by legal or factually sufficient evidence. In points of error one through five, Air & Pump contends there was a fatal variance between Almaquer's pleading and his proof at trial regarding ownership of the allegedly defective product. Finally, in points of error eight through ten, Air & Pump complains of the trial court's refusal to admit into evidence alleged proof of contractual indemnity between itself and IPC.

Almaquer was an employee of IPC, which is in the business of separating salvageable material from waste material. This requires, in part, the removal of sludge from earth pits by means of air-driven pumps. IPC normally operates these pumps by air which is compressed and stored in a tank and supplied by permanent pipes extending from a compressed air tank throughout IPC's plant. On the day in question, however, IPC's regular built-in air compressor was down for repairs, and, as a substitute, IPC rented a portable, gasoline-driven air compression unit from Air & Pump.

Shortly after beginning his shift on the day in question, Almaquer assisted another employee of IPC in removing one of the pumps from its location near an earth pit to an area near the plant's workshop where Air & Pump's portable air compressor was located. Apparently, the pump was not working properly, and it was taken to the workshop for repair. Before any repairs were begun, however, the pump was connected to an air hose, which in turn was connected to the supply valve of the rented air compressor. When the valves at the air compressor and the pump were opened, the pump exploded, and Almaquer was struck in his left leg by a flying object which severely injured him.

In response to special issues, the jury found, in relevant part, that: 1) a part of the pressure central system on the compressor furnished by Air & Pump was defective at the time it was delivered to IPC, and 2) that such condition was a producing cause of the occurrence in question. The jury

awarded Almaquer damages totalling $165,-100.00, in response to the several damage special issues.

■ Appellant does not present any points of error attacking the jury's answers to the causation or to the damage issues. In deciding appellant's "legal sufficiency" point, we are required to review the evidence in its most favorable light to support the trial court's judgment, considering only the evidence and inferences which support the factfinding and rejecting all contrary evidence and inferences. See *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). In deciding appellant's "factual sufficiency" point, we review all of the evidence. See *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951).

In summary, the evidence tended to show that, just prior to the time of the injury, Almaquer and a fellow employee, Flemming, moved the pump to a location near IPC's workshop for repair. Instead of commencing repairs right away, they decided to connect it to the compressed air line to see if it would work. Almaquer and Flemming first opened the valve located on the air supply which was connected to the rented compressor. Next, they opened the valve on the pump. When this latter valve was opened, an explosion occurred and the pump flew apart, injuring Almaquer, who was standing approximately ten to twelve feet away. After the explosion, Flemming discovered that the pressure gauge on the rented compressor unit indicated 290 to 300 pounds of pressure and that the engine on the rented compressor was still running at a high speed. A closer examination disclosed that the copper tube running from the pilot valve on the rented compressor was broken about an inch away from its connection to the pilot valve. This caused the rented compressor to keep running and building up additional pressure.

Mr. Foerster, President of appellant Air & Pump, testified under the adverse party rule. He stated in substance that the purpose of the copper sensing tube was to slow down the engine of the compressor unit when speed for additional pressure was not needed. He stated that the copper tube controls the speed of the engine which either speeds up or slows down, depending upon the message received from the pressure of the tube. Foerster also explained that the pressure of another copper tube sent messages to the "unloaders" which control the amount of air compressed by the pump, and that, if this copper tube failed to function, the "unloaders" would continue to compress air causing the tank to build up to its maximum pressure. Foerster's additional testimony was to the effect that the compression system was dependent on the copper tubes. These tubes controlled the pressure to a pre-set maximum. The copper tubing was one of the most important safety devices to control pressure in the compressor tank.

Foerster further admitted, in substance, that a defect in the copper tubing could cause the pilot valve not to receive the proper pressure message. He stated that, based upon the repairs performed by IPC personnel shortly after the accident, the break in the copper tubing caused excessive air pressure to be forced into the pump which then in turn caused it to explode. The jury also heard the testimony of at least two other witnesses who testified at length concerning the copper tubing and its relation to the safe operation of the air compressor, and concerning the circumstances surrounding the occurrence in question. All of these witnesses agreed that the failure of the copper tubing would produce a situation in which the engine of the compressor would continue to force air beyond the desired maximum limits until the tank or some other equipment gave way. There is evidence that the rented compressor was in the same condition on the day of the occurrence as it was on the day it was delivered to IPC by Air & Pump.

■ We are of the opinion that there is ample evidence in the record to support the findings of the jury that a part of the pressure control system on the compressor in question was defective at the time it was delivered to IPC. Considering all of the

evidence, we find that this jury finding is not against the great weight and preponderance of all of the evidence received by the jury. Appellant argues, in substance, that there is evidence in the record which would support other conclusions. Be that as it may, we cannot substitute our judgment for that of the fact finders who are the judge of the facts and circumstances proven and of the credibility of the witnesses. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273 (1958); *Clark v. Brewer*, 498 S.W.2d 957 (Tex.Civ.App.–Corpus Christi 1973, no writ). Appellant's points of error six and seven are overruled.

Appellant Air & Pump contends that there is a fatal variance between the plaintiff Almaquer's pleadings and his proof at trial regarding ownership of the allegedly defective air compressor. Almaquer's original petition alleged in part the following:

"II

\*   \*   \*   \*   \*   \*

At such time and place a defective high pressure pump owned by Defendant, Air & Pump Co., and furnished to Plaintiff's employer, flew into pieces striking Plaintiff's left leg and causing severe and permanent injuries. Defendant had negligently failed to inspect and prepare the pump before furnishing it to Plaintiff's employer. Plaintiff is also entitled to recover under products liability law because said pump, in the condition in which it was furnished to Plaintiff's employer was unreasonably dangerous and was the producing cause of Plaintiff's injuries."

At trial, the owner of Air & Pump admitted that an air compressor, technically speaking, is a pump. Still a fact, however, is that, while Almaquer's pleading alleged that the defective pump owned by Air & Pump and supplied to IPC exploded, the truth is that it was IPC's pump, a "Wilden" pump, which actually exploded on the day in question. It was on this ground that Air & Pump objected to the admission of any evidence regarding the defective condition of its air compressor. This objection was

overruled by the trial court. It was raised again by Air & Pump in a Motion for Instructed Verdict, a Motion for Judgment, and by an objection to the submission of special issue number one, which inquired into the defective condition of the air compressor.

Put simply, Air & Pump's contention is that there was a fatal variance existing between Almaquer's pleading which alleges that Air & Pump's "pump" exploded, and his proof, which showed that IPC's "pump" exploded. According to Air & Pump, the original petition of Almaquer quite simply alleged incorrect ownership of the supposedly defective product. Thus, only the petitioner's truthfulness is concerned, and it was not subject to a special exception. It meant, under Air & Pump's theory, that Almaquer was limited at trial to proving that either Air & Pump owned the pump which exploded (which it is undisputed it did not) and that such pump was defective, or that the pump which exploded (IPC's pump) was defective.

A variance exists when the proof offered, within the general area of a sufficiently pleaded claim or defense, differs from the proponent's allegations. 2 R. McDonald, Texas Civil Practice § 5.19 (1970). In order for a variance to be fatal, it must be substantial, misleading, and a prejudicial departure from the pleading. *Stone v. Lawyer's Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977). In the case at bar, there is no showing that the variance in question was substantial, misleading, and/or prejudicial. The petition of Almaquer alleged that a product supplied by Air & Pump to IPC was defective and that such defect was a producing cause of Almaquer's injuries. This is generally what Almaquer's proof at trial was designed to show and did show. The variance, therefore, was not fatal. See also Rule 434, T.R.C.P. Points of error one through five are overruled.

Appellant's remaining points of error concern its contention that it was entitled to contribution and/or indemnity against appellee IPC, the employer of appellee Alma-

quer. In points of error eight through ten, appellant complains that the trial court erred by: 1) refusing to admit evidence concerning contractual indemnity; 2) sustaining IPC's objection to the admission of such evidence because appellant's pleadings were insufficient to support a claim for contractual indemnity, and 3) granting IPC's motion for instructed verdict as to appellant's third party action for indemnity. In support of these points of error, appellant presents only general arguments and cites only one authority which does not address the pleading issue. We shall consider appellant's points as we understand them in light of its arguments and authority.

In its third–party action against IPC, appellant alleged, in substance, that the injuries Almaquer sustained were caused by the negligence of IPC in permitting him to use the pump in question in a manner for which the equipment was not designed and in altering or changing the pump in question after its delivery to IPC. In accordance with these charges, appellant further alleged that, in the event it should be found liable to Almaquer, it was entitled to indemnity, or in the alternative, to contribution from IPC. IPC defended appellant's third–party action on the basis that, at the time of the occurrence in question, it carried workmens' compensation insurance which is a complete defense under the laws of Texas to a claim for contribution or indemnity asserted by a third party against whom the injured employee has sought damages.

During the course of the trial, appellant offered into evidence that portion of the delivery ticket pertaining to the rental of the compressor which contained contractual indemnity provisions. The trial court sustained IPC's objection to the introduction of such evidence because appellant's pleadings did not support its claim of contractual indemnity. The delivery ticket and testimony concerning such ticket is before us by way of a bill of exception.

■ As a general rule, the rules relating to pleadings are applicable to actions involving indemnity contracts. See 30 Tex. Jur.2d Indemnity § 21 (1962). A petition in an action predicated upon a contract must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including an allegation of a contractual relationship between the parties, and the substance of the contract which supports the pleader's right to recover. See *Koenning v. Manco Corp.*, 521 S.W.2d 691 (Tex.Civ.App.–Corpus Christi 1975), writ ref'd n. r. e., 531 S.W.2d 805 (Tex.1975); Rule 45, Texas Rules of Civil Procedure; 13 Tex.Jur.2d, Contracts § 374 (1960); 2 McDonald, Texas Civil Practice § 6.14, p. 103 (1969).

■ Appellant's pleadings are insufficient to give IPC fair notice that appellant based its claim for indemnity upon a contractual relationship between the parties. The allegations relate solely to alleged negligent conduct by IPC to support its claim for indemnity. Nor, can it be said that the issue of contractual indemnity was tried by implied consent. IPC consistently objected to the introduction of evidence on the contractual theory of indemnity. The trial court sustained all of these objections and excluded the proffered evidence. Appellant did not seek to cure its pleadings by trial amendment.

■ Even if we considered appellant's pleadings as being sufficient, the proffered evidence preserved in the bill of exceptions does not show a sufficient basis to support an award of contractual indemnity in this case. The indemnity provision in question was not sufficiently prominent to extract proper notice and it did not undertake to indemnify appellant against liability for injuries or damages caused by or resulting from *defects* in the equipment in question. Additionally, the testimony concerning the contract established that the employee of IPC who signed the delivery ticket did not have authority to enter into any kind of a contract that would bind IPC. See e. g., *Goodyear Tire & Rubber Co. v. Jefferson Const. Co.*, 565 S.W.2d 916 (Tex.1978); *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975). Appellant's points of error eight through ten are overruled.

The judgment of the trial court is affirmed.