The CADLE COMPANY, Appellant,

v.

Frank CASTLE and Bank One, Texas, N.A., Appellees.

No. 05–94–00816–CV.

Court of Appeals of Texas, Dallas.

Oct. 24, 1995.

Michael L. Jones, Henry, Meier & Jones, L.L.P., Dallas, for appellant.

Richard Illmer, Foster Reese, III, Cowles & Thompson, Dallas, for appellees.

## OPINION

OVARD, Justice.

The Cadle Company (Cadle) appeals a judgment rendered on a written settlement agreement reached in an alternative dispute resolution procedure. In four points of error, Cadle contends the trial court erred in rendering judgment because the judgment: (1) is not supported by the pleadings; (2) is not supported by the evidence; (3) constitutes an improper consent judgment; and (4) does not conform to the written settlement agreement. For the following reasons, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL HISTORY

Frank Castle (Castle) executed a note payable to Deposit Insurance Bridge Bank. The promissory note was later transferred to Bank One, Texas, N.A. (Bank One). Castle subsequently defaulted on the note, and Bank One sued. In the fall of 1993, Cadle purchased the note from Bank One and filed a motion to realign the parties, substituting itself as plaintiff. Bank One remained a

party to the suit as a result of a counterclaim filed by Cadle.

The trial judge ordered the parties to mediation pursuant to chapter 154 of the Texas Civil Practice and Remedies Code. *See generally* TEX.CIV.PRAC. & REM.CODE ANN. §§ 154.001–154.073 (Vernon Supp.1995). On February 5, 1994, the parties attended a mediation conference and entered into a written settlement agreement. Under the terms of the agreement, Cadle would receive $2,500 from Castle and $12,500 from Bank One. However, the agreement was "subject to" approval by Bank One senior management personnel.

Four days later, Castle filed a "Motion to Enforce Settlement Agreement" with the court. Castle attached a copy of the written settlement agreement to the motion. In his motion, Castle contended, that although the agreement had been finalized and signed at the mediation conference, Cadle had subsequently withdrawn its consent to the written settlement agreement. Castle claimed the agreement was enforceable under section 154.071 of the civil practice and remedies code. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 154.071 (Vernon Supp.1995).

On February 11, 1994, Cadle filed a "Notice of Withdrawal of Consent to Settlement Agreement" with the court. Cadle also filed a response to Castle's motion to enforce, contending that enforcement of the written settlement agreement would be improper.

On February 14, 1994, the trial judge conducted a hearing on Castle's motion to enforce. Without hearing evidence, the trial judge concluded that the terms of the written settlement agreement should be "incorporated" into a final judgment. The judgment provided, in part, that:

> the parties, having been referred to mediation by Order of this Court, did appear ... and reach the written agreement disposing of this cause ... the terms of that agreement are enforceable under TEX.CIV.PRAC. & REM.CODE ANN. § 154.071 (Supp.1994) and are hereby incorporated in this Final Decree disposing of this case.

The terms of the judgment provide for monetary payments by Castle and Bank One that are different from the terms of the written settlement agreement. After a motion for new trial was overruled April 29, 1994, Cadle filed this appeal.

## LACK OF PLEADINGS TO SUPPORT THE JUDGMENT

■ In its first point of error, Cadle challenges the propriety of the trial court entering a judgment based solely on a "Motion to Enforce Settlement Agreement" when no underlying breach of contract claim had been raised in a petition or counterclaim. Because Castle failed to properly plead breach of the written settlement agreement, Cadle contends any judgment entered under such circumstances is improper. Castle, however, argues that such a procedure is authorized under section 154.071 of the civil practice and remedies code.

Section 154.071 provides:

> (a) If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract.

> (b) The court in its discretion may incorporate the terms of the agreement in the court's final decree disposing of the case.

> (c) A settlement agreement does not affect an outstanding court order unless the terms of the agreement are incorporated into a subsequent decree.

TEX.CIV.PRAC. & REM.CODE ANN. § 154.071 (Vernon Supp.1995).

### Section 154.071(a)

■ Under section 154.071(a), either party to a written settlement agreement may seek to enforce the agreement under general contract law. The law regarding enforcement of contracts is well established in Texas. A cause of action for breach of contract consists of the contract itself, which is the primary right of the plaintiff, and its breach by an act or omission of the defendant. *G.P. Enters., Inc. v. Adkins,* 543 S.W.2d 913, 915 (Tex.Civ.App.—Texarkana 1976, no writ); 14 TEX.JUR.3D *Contracts* § 308 (1981). A petition in an action based on a contract must contain a short statement of the cause of action sufficient to give fair notice of the

claim involved, including an allegation of a contractual relationship between the parties, and the substance of the contract which supports the pleader's right to recover. *Air & Pump Co. v. Almaquer*, 609 S.W.2d 309, 313 (Tex.Civ.App.—Corpus Christi 1980, no writ); 14 TEX.JUR.3D *Contracts* § 338 (1981). In response, a defendant may file a general denial which puts at issue all matters not required to be denied under oath or affirmatively pleaded. TEX.R.CIV.P. 92; 14 Tex. Jur.3d *Contracts* § 345 (1981). Many defenses to a breach of contract suit, including lack of capacity, denial of execution, lack of consideration, and usury, must be made by verified denial. TEX.R.CIV.P. 93. Further, the affirmative defenses of accord and satisfaction, duress, failure of consideration, fraud, illegality, statute of frauds, and other matters in avoidance must be affirmatively pleaded. TEX.R.CIV.P. 94.

■ A party to a breach of contract suit is entitled to pretrial discovery. *See generally* TEX.R.CIV.P. 166b, 167, 168, 169, 200, 208. A party is entitled to summary judgment in a breach of contract suit when no material fact issues exist and the movant establishes its right to judgment as a matter of law. TEX. R.CIV.P. 166a; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex.1991). If, however, a trial on the merits is necessary, a party to a breach of contract suit is entitled to a jury trial on disputed issues of fact. *Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571, 575 (Tex.1968). To prevail at trial, the plaintiff must prove: (1) a contract existed between the parties; (2) the contract created duties; (3) the defendant breached a material duty under the contract; and (4) the plaintiff sustained damages. *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex.App.—Austin 1993, writ denied). Judgment is then entered based on the pleadings, evidence, and findings of the judge or jury. TEX.R.CIV.P. 301.

This is the traditional method of enforcing contracts contemplated by section 154.071(a) and relied upon by this Court in *Stevens v. Snyder*, 874 S.W.2d 241 (Tex.App.—Dallas 1994, writ denied); *see* TEX.CIV.PRAC. & REM.

CODE ANN. § 154.071(a) (Vernon Supp.1995). This was not the enforcement procedure relied upon by the trial judge in this case.

### Section 154.071(b)

■ The trial judge in this case relied on section 154.071(b) to "incorporate" the terms of the written settlement agreement into a final judgment. Thus, the issue in this case is the meaning and effect of section 154.071(b) of the civil practice and remedies code.

■ In construing a statute, we look to and follow the intent of the legislature. *Citizens Bank v. First State Bank*, 580 S.W.2d 344, 347 (Tex.1979); *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976). We determine legislative intent by looking at the language of the statute. *Jones v. Del Andersen & Assocs.*, 539 S.W.2d 348, 350 (Tex.1976). In determining the meaning of statutory language, we read the statute as a whole and give consideration to the entire act, its nature and object, and the consequences that would follow from a particular construction. *Sayre v. Mullins*, 681 S.W.2d 25, 27 (Tex. 1984).

Section 154.071(b) gives a trial judge the *discretion* to incorporate specific terms of a written settlement agreement in the trial court's final judgment. Castle and the dissent argue that section 154.071(b) creates a "summary" procedure giving the trial judge the authority to enter a judgment on the merits of the cause of action, over the objection of one or more parties, without a trial, without an evidentiary hearing, and without any underlying petition or counterclaim asserting a breach of contract claim.

■ In considering the plain language of section 154.071(b), we do not find support for the argument that the legislature intended to create a "summary" proceeding for enforcement of written settlement agreements.[1] Further, we believe there is another, more reasonable, explanation for the adoption of section 154.071(b). ADR works because parties are able to explore resolutions to con-

---

1. We note that neither the parties nor this Court has been able to find any legislative history or other discussion that sheds additional light on section 154.071(b)'s intended purpose.

flicts that simply do not fit within the traditional framework of the litigation system. Frequently, these terms are essential parts of a written settlement agreement but have no place in a final judgment. A trial judge should have discretion to tailor a judgment that fits the desires of the parties to an ADR procedure.[2] These considerations strongly suggest that section 154.071(b) was intended to give a trial judge the discretion to either include, *or exclude*, terms of the written settlement agreement when entering judgment. *See Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex.1974) (legislative intent must be ascertained from entire act and not from isolated portions).

The dissent relies on the public policy of the State in encouraging the peaceable resolution of disputes and the early settlement of pending litigation through voluntary settlement procedures to conclude that section 154.071(b) creates a "summary" proceeding. While we share the conviction that ADR plays an important role in the Texas justice system and is clearly supported by public policy, we do not believe this public policy is a sound basis for interpreting section 154.071(b) in such a manner. This "summary" procedure is clearly not peaceable, nor is it voluntary. Moreover, a procedure so summary in nature may become a means of impairing, if not entirely extinguishing, significant and well established procedural and substantive rights. Even if this public policy is a legitimate basis for interpreting the statute, we believe such an interpretation is contrary to the public policy of this State because it effectively deprives a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. Parties would certainly be hesitant to participate in an ADR procedure knowing that any writing generated during the procedure might be considered by a trial judge as an "agreement" under section 154.071(b) and

thus, subject to entry of a judgment in a "summary" fashion.

We do not believe the legislature intended section 154.071(b) to be used to enter a judgment on the merits of a cause of action without a party having the right to be confronted by appropriate pleadings, have an opportunity to conduct discovery and assert defenses, or a chance to have the dispute determined by a judge or jury. In this case, the only document supporting the judgment is a "Motion to Enforce Settlement Agreement" under section 154.071(b). We hold Castle's motion is an insufficient "pleading" to support entry of a judgment that (1) Cadle breached a contract and (2) appellees are entitled to recover damages.

Accordingly, we sustain Cadle's first point of error.

## LEGAL AND FACTUAL INSUFFICIENCY

■ In its second point of error, Cadle contends the evidence is legally and factually insufficient to support the trial court's judgment. Assuming, for the sake of argument only, that the legislature intended to create a "summary" procedure for the enforcement of written settlement agreements when it enacted section 154.071(b), we will address this point of error. All parties on appeal have argued an evidentiary standard of review although the language of the statute is discretionary. We will also, for the sake of argument only, assume that the standard of review for such a "summary" proceeding would be an evidentiary, rather than a discretionary, standard. Under an evidentiary standard, and because of our disposition of Cadle's first point of error, we do not need to address whether the evidence is factually sufficient to sustain the trial court's judgment. *See* Tex.R.App.P. 90(a); *Resolution Trust Corp. v. Cook*, 840 S.W.2d 42, 47–48 (Tex.App.—Amarillo 1992, writ denied) (holding that, because appeal was being reversed

2. The fact that section 154.071(b) is discretionary is a strong indication that it was not intended to create a "summary" procedure for the entry of judgment on the merits of a cause of action. Judgments are entered upon the pleadings, evidence, and findings of the judge or jury. Tex. R.Civ.P. 301; *Harvey v. Crockett Drilling Co.*, 242

S.W.2d 952, 953–54 (Tex.Civ.App.—Waco 1951, no writ). Likewise, a party is entitled to a judgment as a matter of law if legally supported by pleadings, evidence, and findings. There is no authority in Texas for entry of a judgment based on the *discretion* of the trial judge.

and remanded for new trial on separate point of error, the court of appeals need not address factual sufficiency point). Accordingly, we address only whether the evidence is legally sufficient to support the trial court's judgment.

 A no evidence point is a question of law. *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984). We sustain a no evidence point when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively shows the opposite of the vital fact. *Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991).

 An appellant bears the burden to present a sufficient record to show error that requires reversal. Tex.R.App.P. 50(d). We presume the evidence supports the trial court's judgment when the record on appeal contains no statement of facts and the trial court rendered judgment after hearing evidence. *Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993). Nevertheless, when there is no indication that evidence was admitted or considered by the trial court prior to rendering judgment and the record on appeal contains no statement of facts, we indulge no presumptions in favor of the judgment. *Otis Elevator,* 850 S.W.2d at 181; *Thompson v. Haberman,* 739 S.W.2d 71, 72 (Tex.App.—San Antonio 1987, no writ).

The record on appeal does not contain a statement of facts. In its brief, Cadle contends that no statement of facts from the hearing exists because Castle did not offer, and the trial court did not hear, any evidence in support of Castle's motion. Neither Castle nor Bank One challenges these assertions.

We may accept as correct any statement an appellant makes in his original brief regarding the facts or the record unless the opposing party challenges that statement. Tex.R.App.P. 74(f); *Jones v. American Economy Ins. Co.,* 672 S.W.2d 879, 881 (Tex. App.—Dallas 1984, no writ). Neither Castle nor Bank One challenges Cadle's assertion that the trial court failed to hear evidence at

the hearing. The record does not indicate that the trial court heard any evidence at the hearing. Therefore, we accept Cadle's assertion as true. *See Biscamp v. Zeno Carpet Co.,* 473 S.W.2d 218, 219 (Tex.Civ.App.— Beaumont 1971, no writ) (accepting as true appellant's claim that no evidence was introduced in the trial court since appellee did not directly challenge claim and appellate record did not contain statement of facts). Consequently, we indulge no presumptions in favor of the judgment due to Cadle's failure to file a statement of facts in this Court. *See Otis Elevator,* 850 S.W.2d at 181; *Thompson,* 739 S.W.2d at 72.

 Regardless of the fact that no evidence was presented at the hearing, Castle asserts Cadle's notice of withdrawal of consent is a judicial admission that Cadle had entered into and was breaching the written settlement agreement. Castle contends this judicial admission constitutes sufficient proof to support the judgment. We disagree.

 A judicial admission constitutes a formal waiver of proof. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980); *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 466 (Tex.1969). Generally, judicial admissions appear in pleadings or in the stipulations of the parties. *Mendoza,* 606 S.W.2d at 694; *Gevinson,* 449 S.W.2d at 466. The party who made the admission cannot dispute the admitted fact, and the opposing party is relieved of the burden to prove it. *Mendoza,* 606 S.W.2d at 694; *Gevinson,* 449 S.W.2d at 466. To constitute a judicial admission, a statement must be deliberate, clear, and unequivocal. *Flintkote Supply Co. v. Thompson,* 607 S.W.2d 41, 43 (Tex.Civ.App.—Beaumont 1980, no writ); *see Blieden v. Greenspan,* 751 S.W.2d 858, 859 (Tex.1988).

Cadle's notice of withdrawal of consent was not authenticated and admitted into evidence. The trial judge did not take judicial notice of Cadle's notice of withdrawal. Cadle's notice of withdrawal of consent is not a pleading. *See* Tex.R.Civ.P. 45(a) (pleadings shall be by petition and answer). Cadle's notice is not a stipulation of the parties. Therefore, a statement within Cadle's notice

of withdrawal of consent cannot constitute a judicial admission in this case. *See Mendoza,* 606 S.W.2d at 694; *Gevinson,* 449 S.W.2d at 466.

Even if the statement could serve as a judicial admission, it would not support the judgment in this case. Castle contends Cadle made the admission through the following statement:

> The Cadle Company hereby gives notice that it has withdrawn its consent to be bound by the terms of the mediation settlement memorandum.

This statement is not a deliberate, clear, and unequivocal assertion that includes the terms of the judgment entered in this case. The written settlement agreement was not admitted into evidence. The statement relied upon by Castle does not identify the specific terms of the agreement or provide any information relating to damages. Thus, the statement does not constitute a judicial admission that would support the judgment. *See Blieden,* 751 S.W.2d at 859; *Flintkote Supply,* 607 S.W.2d at 43.

The party seeking enforcement of a written settlement agreement as a contract must support it by proof. *Stevens,* 874 S.W.2d at 244; *see Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex.1995). The trial court heard no evidence on Castle's motion. Castle did not authenticate and have admitted into evidence the written settlement agreement or Cadle's notice of withdrawal of consent. The trial judge did not take judicial notice of the contents of the court's file. Although the written settlement agreement provided for approval by senior management personnel of Bank One, Castle did not introduce evidence that such approval had been obtained. There is no evidence showing why the terms of the judgment are different from the terms of the agreement. Moreover, Castle failed to offer any evidence of contract damages relating to a breach. Because Castle failed to offer *any* evidence in support of his motion, we conclude the evidence is legally insufficient to support the trial court's judgment. We sustain Cadle's second point of error.

Having prevailed on a no evidence point, Cadle would ordinarily be entitled to the rendition of judgment in its favor. *National Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969). However, the supreme court has held that appellate courts have broad discretion to remand in the interest of justice. *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966). As long as there is a probability that a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision. *Zion Missionary Baptist Church v. Pearson,* 695 S.W.2d 609, 613 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Because of our conclusion on Cadle's first point of error and in the interest of justice, we will remand this case for further proceedings rather than render a decision on this no evidence point.

## CONSENT JUDGMENT

In its third point of error, Cadle contends the trial court erred in entering judgment based on the written settlement agreement because the agreement violated rule 11 of the rules of civil procedure. *See* Tex.R.Civ.P. 11.

Castle based his motion to enforce the written settlement agreement on section 154.071 of the Texas Civil Practice and Remedies Code. *See* Tex.Civ.Prac. & Rem.Code Ann. § 154.071 (Vernon Supp.1995). The trial court's judgment states the settlement agreement was made during mediation and is enforceable under section 154.071. Neither Castle's motion nor the trial court's judgment addresses rule 11 of the Texas Rules of Civil Procedure. Accordingly, we conclude the trial court's judgment was not rendered pursuant to rule 11. We overrule Cadle's third point of error.

## VARIANCE IN THE JUDGMENT

In its fourth point of error, Cadle contends the trial court erred in entering a judgment which fails to conform to the terms of the written settlement agreement. Because of our disposition of Cadle's first three points, we need not address its remaining point of error. *See* Tex.R.App.P. 90(a).

We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

THOMAS, C.J., LAGARDE, KINKEADE, MALONEY, CHAPMAN, BARBER, MORRIS, WHITTINGTON, and DEVANY, JJ., join in the majority opinion.

JAMES, J., dissents with opinion.

WRIGHT, J., joins in the dissenting opinion.

## JUDGMENT

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. It is **ORDERED** that appellant The Cadle Company recover its costs of this appeal from appellees Frank E. Castle and Bank One, Texas, N.A. The obligations of Western Surety Company as surety on appellant's cost bond are **DISCHARGED.**

Judgment entered October 24, 1995.

JAMES, Justice, Dissenting.

The majority reverses the trial court's judgment enforcing a mediated settlement agreement between the parties. I respectfully dissent. Under the facts of this case, I would conclude the trial court can enforce a mediated settlement agreement through a summary proceeding. I would hold the trial court's actions were proper. I would affirm the trial court's judgment.

## FACTUAL BACKGROUND

Frank Castle (Castle) executed a note payable to Deposit Insurance Bridge Bank. Bank One, Texas, N.A. (Bank One) purchased the loan. Bank One filed suit against Castle when he defaulted on the note. The Cadle Company (Cadle) purchased the note from Bank One and filed a motion to substitute as plaintiff in this action.

The trial court ordered the parties to mediation under chapter 154 of the Texas Civil Practice and Remedies Code. At the mediation settlement conference, the parties completed a mediation settlement memorandum.

The memorandum stated Cadle would initially receive $2,500 from Castle and $12,500 from Bank One by February 18, 1994.

On February 9, 1994, Castle filed a "Motion to Enforce Settlement Agreement" which stated:

On February 5, 1994, the parties ... reached and signed a written agreement settling all aspects of this case.

\* \* \* \* \* \*

On February 8, 1994, ... [Castle] received from the Cadle Company's attorney a statement that the Cadle Company has "... withdrawn its consent to the settlement agreement...."

Castle has relied to his detriment on the existence of the settlement agreement ... Castle asserts that agreement as a defense to further prosecution of this suit....

Castle prays ... that the settlement agreement be enforced and for such other relief to which he may be entitled.

Castle attached as an exhibit to his motion a copy of the mediated settlement memorandum signed by all parties.

On February 11, 1994, Cadle filed a "Notice of Withdrawal of Consent to Settlement Agreement." In this notice Cadle stated, "The Cadle Company hereby gives notice that it has withdrawn its consent to be bound by the terms of the mediation settlement memorandum." The notice stated that at "the conclusion of the mediation, the present parties, counsel and mediator executed a mediation settlement memorandum...." Cadle also attached a "true and correct" copy of the settlement memorandum to his notice.

On February 14, 1995, Cadle filed a "Response to Motion to Enforce Settlement Agreement." Cadle's response once again stated that at "the conclusion of the mediation, the present parties, counsel and mediator executed a mediation settlement memorandum...." Cadle also attached a "true and correct" copy of the settlement memorandum to his response.

On February 14, 1994, after a hearing on the matter, the trial court granted Castle's "Motion to Enforce Settlement Agreement" by entering its "Judgment Based On Settle-

ment Agreement." The judgment stated Cadle was to receive $5,000 from Castle and $10,000 from Bank One. The judgment also stated that the terms of the mediation settlement memorandum shall control in the event of any material variance with the judgment. Bank One and Castle approved the judgment. On February 18, 1994, and February 22, 1994, respectively, Bank One and Castle tendered the amounts specified in the judgment. Cadle returned the payments two months later.

## VALIDITY OF THE AGREEMENT

Cadle argues the trial court had no evidence before it to determine whether there was an enforceable contract between the parties. The trial court had before it the "Mediation Settlement Memorandum." I would conclude this is evidence of an enforceable contract, contrary to Cadle's argument there was no evidence before the court that the parties reached a valid settlement.

Specifically, Cadle complains the settlement memorandum provided the parties were to approve, execute, and file the settlement documents with the trial court by February 18, and the parties did not do so. Cadle also argues the settlement was subject to Bank One's approval, and this approval was never obtained.

Whether "a certain contract provision is a condition [precedent] rather than a promise [covenant], must be gathered from the contract as a whole and from the intent of the parties." *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976).

Conditions precedent to an obligation to perform are those acts or events, which occur subsequent to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Hohenberg Bros.*, 537 S.W.2d at 3. Thus, a condition precedent is an event that must occur before a right can accrue to enforce an obligation. *Bair v. Voelker Realty Co.*, 589 S.W.2d 867, 869 (Tex. Civ.App.—Dallas 1979, no writ).

A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agree-

ment. *Hohenberg Bros.*, 537 S.W.2d at 3. Conditions may, therefore, relate either to the formation of contracts or to liability under them. *Hohenberg Bros.*, 537 S.W.2d at 3.

It is the duty of the Court to look at the entire instrument. We must construe and consider together all its provisions when determining the meaning and intent of a contract that contains a condition precedent. *R.C. Small & Assocs. v. Southern Mechanical, Inc.*, 730 S.W.2d 100, 104 (Tex.App.—Dallas 1987, no writ).

Where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then we interpret the agreement as creating a covenant rather than a condition. *Hohenberg Bros.*, 537 S.W.2d at 3. "Because of their harshness in operation, conditions are not favorites of the law." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex.1990). Thus, courts "are inclined to construe the provisions in a contract as covenants rather than as conditions." *Henshaw v. Texas Natural Resources Found.*, 147 Tex. 436, 444, 216 S.W.2d 566, 570 (1949).

### Executing and Filing Documents With Court

Cadle first argues the memorandum required the parties to approve, execute, and file the settlement documents with the trial court by February 18. The settlement memorandum stated:

8. Documents to be approved and executed by _____

9. Documents to be filed with court by

_____

Each blank had been filled in with "2/18" handwritten.

These are covenants, not conditions precedent to the formation of a binding contract. It is apparent the parties were making a promise to complete these steps by February 18. If the parties did not complete these steps by that date, there would still be a valid agreement. It would be absurd to conclude that the parties intended there be no agreement if these steps were not completed by February 18.

We reach the same result by applying well-established principles of contract law. "Any intention to make time of the essence must be clearly manifested in the contract, because time is not ordinarily of the essence in a contract, and failure to perform at the exact time called for is not a breach of contract." *Shaw v. Kennedy, Ltd.,* 879 S.W.2d 240, 246 (Tex.App.—Amarillo 1994, no writ), citing *Superior Signs, Inc. v. American Sign Servs., Inc.,* 507 S.W.2d 912, 915 (Tex.Civ. App.—Dallas 1974, no writ). A stated date of performance does not make time of the essence. *Argos Resources, Inc. v. May Petroleum, Inc.,* 693 S.W.2d 663, 664–65 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Any untimeliness in completing these steps would not excuse the parties' obligations under the agreements. *See Shaw,* 879 S.W.2d at 246–47. Thus, the parties are still obligated under the agreement.

### *Approval By Bank One Management*

Cadle next argues the memorandum required that Bank One's management approve the settlement, and this approval was not obtained. The settlement memorandum provided, under the caption "Terms of Settlement," "Cadle to receive $15K on or before 2/18/94, $2.5K to be paid by Castle, $12.5K to be paid by Bank One.*" Also, "* subject to Bank One Senior Mgmt [Management] approval" is handwritten at the bottom of this page of the memorandum.

The phrase "subject to" usually indicates "a promise is not to be performed except upon a condition or happening of a stated event." *Shaw,* 879 S.W.2d at 246 (citations omitted).

The intent of the parties is clear. The parties created a binding agreement, enforceable only if Bank One's senior management gave its approval. The settlement memorandum indicates that those attending the mediation were Castle, Castle's counsel, Cadle's representative, Cadle's counsel, and Bank One's counsel. No employee or representative of Bank One attended the mediation. Because only a client can agree to a settlement, and an attorney cannot agree to a settlement binding the client, Bank One's attorney had to obtain Bank One's approval.

*See* TEX.R.DISCIPLINARY P. 1.02(a)(2) *reprinted in* TEX.GOV'T CODE ANN., tit. 2 (1989), subtit. G app. (Vernon Supp.1995). This is why the agreement required approval by Bank One's senior management and not the other parties. Castle and Cadle were at the mediation and had formed a binding agreement. When Bank One's counsel approved the judgment, this was in the role of agent for Bank One. Thus, this approval acted as Bank One's senior management approval of the settlement agreement.

There is no express language within the four corners of the mediated settlement agreement which provided Cadle could withdraw its consent or repudiate this agreement with impunity. Cadle is obligated under the contract.

The majority would have us believe Cadle's argument that the parties intended there be a binding agreement only after Bank One's senior management gave its approval. This interpretation would permit Cadle to withdraw from the agreement prior to Bank One's senior management approval, because a contract would not yet have been formed.

The majority's interpretation is contrary to established contract law and case law pertaining to mediated settlement agreements. Once a party accepts a settlement offer, he cannot withdraw from the agreement arbitrarily. *Stevens v. Snyder,* 874 S.W.2d 241, 243 (Tex.App.—Dallas 1994, writ denied). Because Cadle accepted the settlement offer during mediation, Cadle should not be permitted to repudiate it arbitrarily.

### PURPOSES OF SETTLEMENT

This Court has previously held a party cannot arbitrarily withdraw from a settlement agreement once the party has accepted a settlement offer. *Stevens,* 874 S.W.2d at 243. Other Texas courts of appeals note the purpose and value of such a policy. "Hopefully, mediation will assist the parties in reaching a voluntary agreement that will serve to resolve their dispute and avoid the need for traditional litigation. If voluntary agreements reached through mediation were non-binding, many positive efforts to amicably settle differences would be for naught."

*In re Marriage of Ames,* 860 S.W.2d 590, 592 (Tex.App.—Amarillo 1993, no writ). "The law has always favored the resolution of controversies through compromise and settlement rather than through litigation[,] and it has always been the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Hernandez v. Telles,* 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ).

> It is the policy of the law to discourage litigation; and hence the settlement of controversies by compromise is approved by the courts, being favored both at law and in equity. Contracts of compromise are sustained on the ground that they are not only beneficial in themselves, but conducive to peace and harmony.

*Gillman v. Gillman,* 313 S.W.2d 931, 941 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.) (quoting 9 TEX.JUR. *Compromise and Settlement* § 3 (1930)).

Federal courts are aware also of the benefits of encouraging and enforcing settlement agreements. Settlement agreements "are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir.1977) (citations om.). The compromise of complex litigation is favored by strong judicial policy and public policy to avoid the expense and uncertainties of the outcome of wasteful litigation. *See In re Corrugated Container Antitrust Litig.,* 556 F.Supp. 1117, 1157 (S.D.Tex.1982). Thus, following the precedent of both state and federal courts as well as of this Court, I reiterate the policy behind the importance of the trial court's ability to enforce mediated settlement agreements.

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

### *Interpreting the Texas Statute*

The principal rule of statutory interpretation provides that a court must look to the intent of the legislature and must give effect to that intent. *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982). Courts should read statutes as a whole and construe statutes to give meaning and purpose to every part. *Ex parte Pruitt,* 551 S.W.2d 706, 709 (Tex.1977). We have a duty to give effect, if possible, to every clause of a statute. *Marrs v. Ford Motor Co.,* 852 S.W.2d 570, 576 (Tex.App.—Dallas 1993, no writ).

The Texas Civil Practice and Remedies Code states Texas's policy about settlement: "It is the policy of this state to encourage the peaceable resolution of disputes ... and the early settlement of pending litigation through voluntary settlement procedures." TEX.CIV. PRAC. & REM.CODE ANN. § 154.002 (Vernon Supp.1995). "It is the responsibility of all trial and appellate courts and their court administrators to carry out the policy under Section 154.002." TEX.CIV.PRAC. & REM.CODE ANN. § 154.003 (Vernon Supp.1995).

The Texas Civil Practice and Remedies Code provides for enforcement of settlement agreements as follows:

> Effect of Written Settlement Agreement
>
> (a) If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract.
>
> (b) The court in its discretion may incorporate the terms of the agreement in the court's final decree disposing of the case.
>
> (c) A settlement agreement does not affect an outstanding court order unless the terms of the agreement are incorporated into a subsequent decree.

TEX.CIV.PRAC. & REM.CODE ANN. § 154.071 (Vernon Supp.1995).

Section 154.071(b) of the Texas Civil Practice and Remedies Code states that a trial court may incorporate the terms of a settlement agreement in its final decree disposing of a case. It is the policy of this State to encourage settlement. Thus, reading the statute as a whole and construing the statute to give meaning to every word and purpose to every part, I would conclude the legislature intended courts to be able to enforce a settlement agreement through a summary proceeding without the filing of a separate action. To conclude otherwise would take

away the plain meaning and purpose of this section and undermine the policy of this State. *See Ex parte Pruitt,* 551 S.W.2d at 709; *Marrs,* 852 S.W.2d at 576.

Unless a statute is ambiguous, we must follow the clear language of the statute. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). We should examine carefully the intent of the statute and give full effect to all its terms. Our interpretation should express only the will of the legislature without forcing a construction contrary to the plain sense meaning of the words employed. *Simmons v. Arnim,* 110 Tex. 309, 324, 220 S.W. 66, 70 (1920). In plain and unambiguous terms the statute grants the trial court discretion to render judgment incorporating the terms of a written mediated settlement agreement.

The tortured construction ascribed by the majority serves neither logic nor the State's policy and renders the clear language of the subsection useless. The majority opinion ascribes to subsection (b) the same meaning it ascribes to subsection (a) and concludes both provisions require a petition and answer, discovery, and trial before the trial court may exercise its discretion to incorporate the terms of the settlement agreement in its judgment. Because this conclusion renders subsection (b) meaningless, I respectfully disagree. *See RepublicBank Dallas, N.A.,* 691 S.W.2d at 607.

Where, as here, the facts are not in dispute, I would conclude extensive pleading, discovery, and an evidentiary hearing are neither necessary nor appropriate. Where the facts are undisputed, a motion for enforcement and a response to the motion are sufficient pleadings to protect the due process rights of the parties. Where, as here, enforcement is an issue of law for the court, I would conclude the trial court does not abuse its discretion in following subsection (b) of the statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 154.071(b) (Vernon Supp.1995).

### The Law of Other Jurisdictions

Other states' statutes incorporate language similar to the language found in the Texas statute. "All courts are further granted the discretionary authority to make, at the request of a party, appropriate orders to confirm and enforce the results produced by such dispute resolution process." ARK.CODE ANN. § 16–7–102(b) (Michie 1987).

> If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract. Upon request of all parties and consistent with law and public policy, the court shall incorporate the written agreement into the terms of its final decree disposing of a case.

VA.CODE ANN. § 8.01–576.11 (Michie Supp. 1995). "If the parties involved in a dispute resolution process reach a settlement and execute a written agreement, the agreement is enforceable in the same manner as any other written contract." MICH.COMP.LAWS ANN. § 691.155(6a) (West Supp.1995).

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

CAL.CIV.PROC.CODE § 664.6 (Deering Supp. 1995).

California courts have interpreted the statute quoted above to mean a trial court may enforce a settlement agreement through a summary proceeding. The California Court of Appeals held as follows:

> In this case we hold that if parties to pending litigation stipulate orally before the court or in writing to a settlement of all or a part of the case, the trial court upon the motion of a party may enter judgment pursuant to the terms of the settlement. The Legislature has now provided that a motion to enter judgment pursuant to such a settlement need not be a motion for summary judgment.

*Corkland v. Boscoe,* 156 Cal.App.3d 989, 203 Cal.Rptr. 356, 356 (1984). *Corkland* upheld and expanded a previous decision of the Cali-

fornia Court of Appeals in which the court stated:

> [W]hen the fact of settlement and the terms thereof are not subject to reasonable dispute, to require a party to bring a separate suit in equity to enforce the agreement, or raise it by way of affirmative defense during a trial, would defeat the very purpose the settlement conference is designed to achieve—[avoiding] the time and expense of trial.

*Gopal v. Yoshikawa,* 147 Cal.App.3d 128, 195 Cal.Rptr. 36, 38 (1983) (citations omitted). Additionally, the Utah Supreme Court held, "It is true that, where an alleged breach of an agreement of compromise and settlement occurs, the aggrieved party need not file a separate action to seek judicial relief, but may proceed by a simple motion made as a part of the original action on the underlying dispute." *L & A Drywall, Inc. v. Whitmore Constr. Co.,* 608 P.2d 626, 629 (Utah 1980) (citation omitted).

Federal cases hold the filing of a separate action to enforce a settlement agreement is unnecessary. The Sixth Circuit stated:

> To take the ... position that the present motion to reinstate the case for alleged failure to comply with the terms of the settlement agreement is a mere contract dispute is to close one's eyes to the reason the agreement was formed. The agreement in question came into existence not in the free market place but in response to pending litigation in a federal court. It is not understating the issue to say that without the lawsuit, the agreement might never have come to pass. Therefore, the contract entered into between the parties cannot be viewed independently of the original suit; its formation was an outgrowth of this case.

*Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). The federal district court for the Northern District of California then applied *Aro* stating, "The jurisdictional analysis in *Aro* should be followed in the present case.... It would be totally inappropriate to allow defendants to strip federal courts of exclusive jurisdiction over a lawsuit merely by entering a settlement in

bad faith." *Sidewinder Marine, Inc. v. Nescher,* 440 F.Supp. 680, 682 (N.D.Cal. 1976).

The Sixth Circuit also stated, "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. National Distillers Prods. Co.,* 483 F.2d 619, 621 (6th Cir.1973). The federal district court for the Southern District of Texas held:

> The law is clear that settlement agreements are binding upon the parties and that the trial court is empowered to summarily enforce a settlement agreement made by the litigants while the case is pending before it.... Such agreements need not be written nor formally submitted, so long as the record reflects that mutual assent to settle the litigation has been orally expressed.

*United States v. Katy Indep. Sch. Dist.,* 333 F.Supp. 1325, 1330 (S.D.Tex.1971) (citations om.).

Additionally, various authors complain of the wastefulness of filing a separate action to enforce settlement agreements.

> To maintain that a mediation agreement must be enforced through an independent or continuing action for breach of contract would also render the ADR mediation procedure less powerful. One of the many advantages of the process is avoiding additional litigation.... The probability of immediate enforcement without continued litigation would make ADR procedures more meaningful and useful.... The potential problem lies in what impact precedents which limit enforceability have on good faith participation in the process.

Harper Estes, *Enforcement of Settlement Agreements Made at Mediation,* 58 Tex.B.J. 335, 336–37 (1995). "[T]he party seeking enforcement of [a] settlement agreement must normally file a contract action rather than simply beginning postjudgment execution procedures available to enforce a court judgment. This additional expense and the uncertainty of success argue against recourse to mediation." Nancy H. Rogers & Craig A.

McEwen, Mediation: Law, Policy & Practice § 4.02, at 5 (2d ed. 1994).

Thus, keeping with the goals and purposes of mediation in general and agreeing with the law of other jurisdictions, where the facts are not disputed, I would conclude it is proper for a trial court to enforce a mediated settlement agreement through a summary proceeding, and, after notice and hearing, to incorporate the terms of the agreement in the court's final decree disposing of the case. *See Gopal,* 195 Cal.Rptr. at 38.

## THE MAJORITY OPINION

The majority opinion discusses a myriad of possible contract defenses not germane to this case. The only issues before the trial court were ambiguity of a minor provision of the agreement and an undisputed issue of law and fact: Was Cadle's withdrawal of consent to the mediated settlement agreement effective? By addressing hypothetical factual situations and abstract legal theories not presented in this case, the majority renders an impermissible advisory opinion. *See Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). I would consider only the issue of the correct procedure when one party seeks to unilaterally repudiate the mediated settlement agreement.

I agree with the majority's conclusion overruling Cadle's third point of error that the trial court did not render judgment pursuant to rule 11 of the Texas Rules of Civil Procedure. I would follow the Texas Supreme Court's rationale in *Padilla v. LaFrance,* 907 S.W.2d 454 (Tex.1995). In *Padilla,* the Texas Supreme Court stated:

> Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

*Padilla,* 907 S.W.2d at 461. I note, as does the majority, that Cadle withdrew its consent to be bound by the settlement agreement's terms after Castle filed his "Motion to Enforce Settlement Agreement." I agree with the majority that the trial court's judgment states Cadle, Castle, and Bank One entered into and signed a settlement agreement during mediation that is enforceable under section 154.071 of the Texas Civil Practice and Remedies Code. Thus, the trial court did not enter an agreed judgment. The trial court entered a judgment enforcing a binding settlement agreement. *See Padilla,* 907 S.W.2d at 461.

Regarding Cadle's first and second points of error, I agree pleadings and proof are required for the trial court to properly enter judgment. A judgment cannot stand unless pleadings and evidence support it. Tex. R.Civ.P. 301; *Cartwright v. MBank Corpus Christi, N.A.,* 865 S.W.2d 546, 551 (Tex. App.—Corpus Christi 1993, writ denied). However, I disagree with the majority's conclusion that sufficient pleadings and proof were not present in this case. The majority ignores *all* the postmediation pleadings filed in the trial court to avoid finding that the facts were judicially admitted. Without exception, each pleading unequivocally declares that the settlement agreement was reached and that the only issues before the trial court were whether the agreement was ambiguous and whether Cadle could arbitrarily abrogate the agreement it had signed. Ambiguity was a question of law for the court. Cadle's right to unilaterally withdraw consent was a question of law for the court.

The majority applies rule of appellate procedure 74(f) to conclude that no evidence was presented at the hearing on Castle's motion to enforce the mediated settlement agreement. Without any support in the record, the majority goes even further and concludes the trial court did not take judicial notice of the various pleadings before it at the hearing. I disagree that rule 74(f) should be the basis for presuming more than appellant's brief specifically provides. On May 13, 1994, Cadle requested the preparation of a statement of facts from the hearing on Caste's motion for enforcement. However, Cadle failed to file the statement of facts as part of the record here. The request from Cadle is some evidence in the record the hearing was

evidentiary. I respectfully disagree that we should apply rule 74(f) where unsupported allegations in a brief are contradicted in the record. *See Estate of Milo v. Park Place Hosp.*, 883 S.W.2d 779, 780–83 (Tex.App.—Beaumont 1994, writ granted). To the contrary, I would apply rule 50(d) and conclude the trial court had sufficient evidence to support its judgment. *See Otis Elevator v. Parmelee*, 850 S.W.2d 179, 181 (Tex.1993).

Neither defense asserted by Cadle required an evidentiary hearing because the facts were not in dispute. *See Gulf Coast Inv. Corp. v. Nasa 1 Business Ctr.*, 754 S.W.2d 152, 153 (Tex.1988); *see also Classic Promotions Inc. v. Shafer*, 846 S.W.2d 948, 950 (Tex.App.—Houston [14th Dist.] 1993, no writ). The statute specifically grants the court the discretion to incorporate the terms of the mediated settlement agreement in its judgment. TEX.CIV.PRAC. & REM.CODE ANN. § 154.071(b) (Vernon Supp.1995).

### Castle's Pleadings

Courts construe all pleadings so as to do substantial justice. TEX.R.CIV.P. 45. Pleadings require parties to give adversary parties notice of each party's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex.1991). Generally, courts will construe pleadings as favorably as possible to the pleader. *Gulf, Colo. & S.F. Ry. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963); *Henderson v. Henderson*, 694 S.W.2d 31, 36 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

If pleadings fairly notify the other party of the basis of the pleader's claims, they are sufficient. TEX.R.CIV.P. 45, 47; *Schoellkopf v. Pledger*, 778 S.W.2d 897, 899 (Tex.App.—Dallas 1989, writ denied). The court must also consider the pleader's intention and treat all reasonable inferences from the facts as having been stated sufficiently in the pleadings. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). Courts consider motions for summary judgment, as well as responses thereto, as pleadings. *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 195 (Tex.App.—

Houston [14th Dist.] 1992, writ denied); *NCNB Tex. Nat'l Bank v. Anderson*, 812 S.W.2d 441, 442 (Tex.App.—San Antonio 1991, no writ).

Castle's "Motion to Enforce Settlement Agreement" gives notice of Castle's claims because Castle alleges: (1) the parties reached an agreement; (2) Cadle notified Castle of Cadle's withdrawn consent; and (3) Castle detrimentally relied on the agreement. *See Schoellkopf*, 778 S.W.2d at 899. The motion then seeks specific enforcement of the settlement agreement. Thus, the motion gives Cadle notice of Castle's claims and the relief sought. *See Perez*, 809 S.W.2d at 218. Therefore, construing this motion favorably to Castle and considering Castle's intention, I would conclude Castle's "Motion to Enforce Settlement Agreement" is a pleading. Castle's motion closely parallels a motion for summary judgment based on undisputed facts. Likewise, Cadle's response to the motion is equivalent to a response to a motion for summary judgment. To conclude the motion and the response to it are not pleadings is an absurdity.

### Castle's Proof

Cadle's "Notice of Withdrawal of Consent to Settlement Agreement" also serves as a pleading and as such provides sufficient proof of a settlement agreement. Cadle's withdrawal notice gives the other parties knowledge of Cadle's claims and relief sought, by acknowledging the existence of an agreement and by withdrawing consent to its terms. *See Perez*, 809 S.W.2d at 218. Because the other parties are given fair notice of Cadle's claims, the notice is sufficient as a pleading. *See Schoellkopf*, 778 S.W.2d at 899.

Texas law regards assertions of fact, not pleaded in the alternative, in the live pleadings of a party as formal judicial admissions. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983). Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence. *Houston First Am. Sav.*, 650 S.W.2d at 767. The fact finder accepts as true the facts alleged or admitted in the live pleadings of a party. These facts are binding on the pleader.

*Houston First Am. Sav.*, 650 S.W.2d at 769. Therefore, we should take as true the statements made by Cadle in its "Notice of Withdrawal of Consent to Settlement Agreement."

Cadle states in its notice:

At the conclusion of the mediation, the present parties, counsel and mediator executed the mediation settlement memorandum, a true and correct copy of which is attached hereto.... The Cadle Company hereby gives notice that it has withdrawn its consent to be bound by the terms of the mediation settlement memorandum.

Cadle admits the existence of the agreement and its consent to be bound by the agreement's terms. Additionally, Cadle's withdrawal of consent demonstrates its unwillingness to be bound by the terms of the agreement to which it originally agreed.

Therefore, I would conclude Cadle's statements found in its pleading are deliberate, clear, and unequivocal. As such, they constitute admissions and thus sufficient proof of the existence of an agreed settlement and breach thereof. *See Houston First Am. Sav.*, 650 S.W.2d at 767. The trial court properly based its judgment on this proof. The majority cites cases in which allegations were vague, incomplete, or equivocal. I find those cases inapposite.

Further, I note the parties do not dispute that the agreement exists. Both Castle and Cadle attached copies of the signed agreement to their respective pleadings. Cadle, through its own admission, agreed to be bound by the agreement's terms. This provides additional proof, not only of the existence of an agreement, but also of Cadle's breach of the agreement.

## VARIANCE IN THE JUDGMENT

Because I would overrule Castle's first, second, and third points of error, I would also address Castle's fourth point of error. Castle contends the trial court erred in entering a judgment which fails to conform to the terms of the written settlement agreement.

The trial court's judgment parallels the terms of the settlement agreement verbatim, except for the portion related to the specific amounts Cadle is to receive from Castle and Bank One. The current judgment, in relevant part, states, "Cadle is to receive $15,000 on or before 2/18/94. $5,000 to be paid by Castle, $10,000 to be paid by Bank One Texas, N.A." The settlement agreement, in relevant part, states, "Cadle [is] to receive $15,-000 on or before 2/18/94. $2,500 to be paid by Castle, $12,500 to be paid by Bank One." The judgment further provides that in the event of conflict the settlement agreement controls. Therefore, this specific language resolves any conflict in favor of the settlement agreement. *See Ames*, 860 S.W.2d at 594. I would overrule Castle's fourth point of error. I would affirm the trial court's judgment as it is.

## CONCLUSION

A party to a mediated settlement agreement cannot unilaterally withdraw from the agreement. If a party does withdraw, the trial court can enforce the settlement agreement after notice and hearing. *See Padilla*, 907 S.W.2d at 461. The trial court can incorporate the settlement agreement's terms into its final judgment.

The majority opines extensively on possible contractual claims and defenses that *might* be alleged in opposing enforcement of mediated settlement agreements that would require extensive pleadings and discovery. The sole issue here is withdrawal of consent. None of the hypothetical claims or defenses is before us here. In doing so, the majority inadvisably renders an "advisory opinion" contrary to established case law. *See Tex. Ass'n of Business*, 852 S.W.2d at 444.

By its advisory opinion the majority opens Pandora's box. The majority invites disgruntled parties who seek to repudiate mediated settlement agreements to engage in extensive discovery and launch a fresh round of litigation. The policy of the State expressed in the statute will be completely abrogated.

In this case, we have sufficient pleadings and proof. Castle's "Motion to Enforce Settlement Agreement" and Cadle's response meet the requirements of a pleading. Additionally, because Cadle's "Notice of With-

drawal of Consent to Settlement Agreement" also constitutes a pleading, this Court takes Cadle's statements therein as true. Cadle's statements constitute admissions and thus sufficient proof of the existence of a settlement agreement and Cadle's breach thereof. Therefore, I would hold the trial court did not err in enforcing the agreement between the parties. Any question of the differing amounts to be paid is answered by the judgment's specific language giving the settlement agreement precedence over conflicting terms.

I would affirm the trial court's judgment.

WRIGHT, J., joins in this dissent.