**Walford D. MARRS, Individually and as Executor of the Estate of Virginia Marrs, Deceased, et al., Appellants,**

**v.**

**FORD MOTOR COMPANY, Appellee.**

**No. 05–92–00189–CV.**

Court of Appeals of Texas, Dallas.

Jan. 27, 1993.

---

Stephen F. Malouf, Dallas, for appellants.

Eugene W. Bees, II, Austin, Malcolm E. Wheeler, Denver, CO, for appellee.

Before Justices KINKEADE, BURNETT and BARBER, JJ.

## OPINION

BURNETT, Justice.

Walford D. Marrs, et al. ("Marrs") brought a common law products liability action against Ford Motor Company ("Ford"). Marrs alleged that the defective design of a 1986 Ford Taurus caused the death of Virginia Marrs. The Taurus did not have a passive-restraint system such as an airbag. Marrs appeals the summary judgment granted Ford.

## I. THE BACKGROUND

### A. *Factual and Procedural History*

Virginia Marrs, a front seat passenger of a 1986 Ford Taurus, died in a head-on collision. The Taurus had safety belts and complied with all applicable federal safety standards. Mrs. Marrs was wearing a properly functioning seat belt when the accident occurred. Marrs brought suit against Ford. Marrs alleged that the Taurus was unreasonably dangerous because it did not include a passenger-side airbag. Ford moved for partial summary judgment on the ground that the National Traffic and Motor Vehicle Safety Act, 15 U.S.C.A. §§ 1381–1431 (West 1982 & Supp.1992) ("Safety Act" or "Act") and the federal motor vehicle safety standards ("FMVSS") promulgated under the Act pre-empt the no-airbag claim. The trial court's partial summary judgment became final when Marrs nonsuited the remaining cause. Marrs now appeals the summary judgment the trial court granted Ford. The question before us is whether federal safety regulations pre-empt a state tort law claim that an automobile was defective because it lacked airbags.

Although the subject of a number of federal and state court decisions, the issue of federal pre-emption of common law passive-restraint claims has not until now come before a Texas appellate court. Courts that have analyzed the Safety Act and its standards have come to different conclusions. The vast majority of courts have found federal pre-emption of common

law passive-restraint claims.[1] We conclude that an actual conflict exists between a state common law no-airbag claim and federal law. We affirm the trial court's judgment.

## B. *The Safety Act*

■ Congress enacted the Safety Act of 1966 in response to the "soaring rate of death and debilitation on the Nation's highways." S.Rep. No. 1301, 89th Cong., 2d Sess. 1 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709. The Safety Act sought to increase automotive safety in three principal ways. First, the Act provides for research, testing, and training in traffic safety. *See* 15 U.S.C.A. § 1395 (West 1982). Second, the Act requires manufacturers to notify the public of automotive defects relating to safety and to repair of the defects. *See* 15 U.S.C.A. §§ 1411–1419 (West 1982). Third, the Act permits the Department of Transportation to promulgate federal motor vehicle safety standards. *See* 15 U.S.C.A. §§ 1391(2), 1392(a), 1396, 1397 (West 1982).

## C. *FMVSS 208*

In 1967, the Department of Transportation ("DOT") first adopted FMVSS 208, entitled "Occupant Crash Protection." *See* 32 Fed.Reg. 2415 (1967). DOT defined its scope: "This standard specifies performance requirements for the protection of vehicle occupants in crashes." 49 C.F.R. § 571.208 (1987). DOT defined its purpose:

> [T]o reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropo-

morphic dummies in test crashes, and *by specifying equipment requirements for active and passive-restraint systems.*

49 C.F.R. § 571.208 (1987) (emphasis added).

FMVSS 208 initially required the installation of manual lap belts in all new automobiles. *See* 32 Fed.Reg. 2415 (1967). In 1972, DOT amended FMVSS 208 to require a gradual phase-in of passive restraints in all cars. For models made before August 1975, the regulations required manufacturers, using manual belts, to use an ignition interlock system which prevented a car from starting until the seat belts were fastened. *See* 37 Fed.Reg. 3911–12 (1972). Public outcry against this ignition interlock system prompted Congress to amend the Act in 1974. The amendment required DOT to rescind the ignition interlock requirement. *See* 39 Fed.Reg. 38,380 (1974). DOT adopted a standard that *permitted* manufacturers to install either passive-restraint systems or manual belt. *See id.* Further, the 1974 amendment prohibited DOT from issuing any standard that *required* manufacturers to install passive restraints, unless DOT first submitted the standard to both houses of Congress, and Congress approved. *See* 15 U.S.C.A. § 1410b(b), (c) (West 1982).

In 1984, DOT promulgated the version of FMVSS 208 in effect when Ford designed and manufactured the Taurus. As amended, FMVSS 208 granted manufacturers the option to install one of three restraint systems: passive-restraints for front and lateral crashes, passive-restraints for front crashes plus lap belts for side crashes and rollovers, or manual seat belts alone.[2] *See*

---

1. The majority of courts have found "implied" pre-emption of passive-restraint claims, while not finding express pre-emption. *See, e.g., Kitts v. General Motors Corp.,* 875 F.2d 787 (10th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. General Motors Corp.,* 865 F.2d 395 (1st Cir.1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). Other courts have found that such claims are expressly pre-empted by federal law. *See, e.g., Cox v. Baltimore County,* 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986). A minority of courts have found that the Safety

Act and its standards do not preclude state common law actions based on a failure to install passive-restraint systems in automobiles. *See, e.g., Gingold v. Audi–NSU–Auto Union, A.G.,* 389 Pa.Super. 328, 567 A.2d 312 (1989); *Garrett v. Ford Motor Co.,* 684 F.Supp. 407 (D.Md.1987); *Murphy v. Nissan Motor Corp. in U.S.A.,* 650 F.Supp. 922 (E.D.N.Y.1987).

2. This version presently in effect requires manufacturers to equip all automobiles manufactured after September 1989 with passive restraints. *See* 49 Fed.Reg. 28,962–63, 28,991, 28,996 (1984) (codified at 49 C.F.R. § 571.208 (1987)).

49 Fed.Reg. 28,962, 29,009–10 (1984). FMVSS 208 explicitly authorizes manufacturers to use manual belts, such as those installed in the Ford Taurus, in all vehicles made in the 1986 model year. *Id.*

Ford's compliance with FMVSS 208 is the basis of its argument that federal law pre-empts Marrs's no-airbag claim. Ford argues that FMVSS 208, with its three basic options, defines the federal safety standard for occupant crash protection. Ford asserts that section 1392(d) of the Safety Act expressly pre-empts common law standards if those standards are not the same as the requirements of FMVSS 208. However, the Act has a savings clause:

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under the common law.

15 U.S.C.A. § 1397(k) (West Supp.1992). This section is the basis of Marrs's argument that the Act does not pre-empt the no-airbag claim.

## II. FEDERAL PRE–EMPTION DOCTRINE

■ Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause empowers Congress to pre-empt state law. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). Federal pre-emption of state law can occur in three situations: (1) where Congress explicitly pre-empts state law; (2) where pre-emption is implied because Congress has occupied the entire field; and (3) where pre-emption is implied because there is an actual conflict between federal and state law. *Schneidewind v. ANR Pipeline Co.*, 485

U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988).

■ Where pre-emption is claimed because a state law conflicts with congressional action, federal law pre-empts the conflicting state law where compliance with both the federal and the state regulations is a physical impossibility, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■ Pre-emption is a matter of congressional intent. In determining whether federal law pre-empts a state cause of action, our "sole task is to ascertain the intent of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). However, we do not lightly presume pre-emption. *Id.* at 281, 107 S.Ct. at 689. We presume that the federal law does not displace existing state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). We insure neither Congress unintentionally nor the courts unnecessarily disturb the federal-state balance. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The critical question in any pre-emption analysis remains whether Congress intended federal regulation to supersede state law. *Louisiana Pub. Serv. Comm'n*, 476 U.S. at 369, 106 S.Ct. at 1898.

## III. CONGRESSIONAL INTENT

### A. *Express Pre-emption*

Initially, Ford contends that section 1392(d) of the Safety Act[3] expressly pre-empts Marrs's common law action. Ford

---

3. Section 1392(d), entitled "Supremacy of Federal standards; allowable higher standards for vehicles used by federal or state governments," provides in part: "Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." 15 U.S.C.A. § 1392(d) (West 1982).

argues that FMVSS 208 defines the federal safety standard for passive-restraint systems. Section 1392(d) mandates that state law may not set up a safety standard on this aspect of performance that differs from the requirements of FMVSS 208. According to Ford, exposure to possible liability under state common law because of the absence of airbags has the effect of setting up a state standard within the meaning of section 1392(d). If not identical to FMVSS 208, federal law expressly pre-empts the common law standard.

Ford argues that the recent Supreme Court ruling in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), supports its express pre-emption position. In *Cipollone*, the Supreme Court held:

> [w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.

—— U.S. at ——, 112 S.Ct. at 2618 (citations omitted). The Court explained: "[s]uch reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.*

Ford contends that *Cipollone* and its principles support express pre-emption of the present no-airbag claim. Ford urges this Court to look only to section 1392(d) in discerning congressional intent about fed-

eral pre-emption of state law. Ford asserts that section 1392(d) explicitly addresses the issue of pre-emption and provides a reliable indicium of congressional intent with respect to state authority. Section 1392(d) provides two exceptions to federal pre-emption of state law.[4] Ford argues that section 1392(d)'s two exceptions show that Congress knew how to carve out exceptions in that provision. Ford asserts that because no other exception appears within the pre-emption clause, the doctrine of *expressio unius est exclusio alterius* establishes that there can be no other exceptions.

Ford concludes that because Marrs's no-airbag claim does not fall into either of the exceptions allowed in section 1392(d), the section expressly pre-empts the products liability claim. On the other hand, Marrs asserts that the common law savings clause, section 1397(k), authorizes the prosecution of *any* common law claim, including those that might establish a rule not identical to the federal safety standards.

■ Applying *Cipollone*, we must read sections 1392(d) and 1397(k) together. This Court cannot look only to section 1392(d) in discerning congressional intent about federal pre-emption of state law. First, section 1392(d) does not "provide a reliable indicium of congressional intent with respect to state authority." When Congress specifically included a clause preserving state common law claims, the pre-emption provision cannot stand as the sole beacon of congressional intent regarding state authority.

■ In *Cipollone*, the statutes in question did not contain savings clauses.[5] —— U.S. at ——, 112 S.Ct. at 2621. Here the

---

**4.** These exceptions are: (1) Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal standard; (2) Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable

Federal standard. 15 U.S.C.A. § 1392(d) (West 1982).

**5.** The Supreme Court, in a footnote, discusses that both sides make much of the fact that Congress did not include a savings clause preserving common law claims. —— U.S. at ——, n. 22, 112 S.Ct. at 2621 n. 22. The Court found the lack of a savings clause to make perfect sense: "Congress was neither pre-empting nor saving common law as a whole—it was simply pre-empting particular common law claims, while saving others." *Id.*

Safety Act contains *both* a savings clause which would preserve the claim and a pre-emption provision that would preclude the claim. We cannot read either provision in isolation. We have a duty to give effect, if possible, to every clause of a statute. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). We may not disregard section 1397(k) in determining congressional intent concerning state authority. When Congress specifically included a savings clause, arguably excepting all common law claims from federal pre-emption, we cannot interpret the pre-emption provision to mean that Congress intended no other exception to federal pre-emption than the two specified within section 1392(d).

*Cipollone* encourages courts not to look at *substantive* provisions of the statute when Congress has specifically considered the pre-emption issue and included a pre-emption provision. — U.S. at —, 112 S.Ct. at 2618. However, the savings clause is not a *substantive* provision but a provision dealing with the very issue of state authority. *Cipollone* encourages this Court to consider both the pre-emption provision, section 1392(d), and the savings clause, section 1397(k), together to determine congressional intent about state authority.

Next, Ford argues that we should narrowly construe section 1397(k) because its limited purpose is to express Congress' intent not to pre-empt the entire field of automobile safety. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 328, 101 S.Ct. 1124, 1135, 67 L.Ed.2d 258 (1981). According to Ford, Congress enacted section 1397(k) to insure only that state common law continues to exist where DOT has not promulgated a federal safety standard. However, such a construction would render the savings clause a mere redundancy. This is so because the pre-emption provision itself provides that where a federal standard does not govern the same aspect of performance as the state standard, the federal standard does not pre-empt the state standard. *See* 15 U.S.C.A. § 1392(d) (West 1982); *Taylor v. General Motors Corp.*, 875 F.2d 816, 824

(11th Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). Ford's construction undermines the express language of section 1397(k). Section 1397(k) recognizes that compliance with a particular federal safety standard, like FMVSS 208, does not exempt Ford from common law liability. *See* 15 U.S.C.A. § 1397(k) (West Supp.1992); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1121 (3d Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

 Considering section 1392(d) together with section 1397(k), we conclude that common law liability survives federal regulation, even in those areas where federal safety standards have actually been established. Section 1392(d) does not expressly pre-empt Marrs's common law action.

### B. *Implied Pre-emption*

 Finding that section 1392(d) does not expressly pre-empt Marrs's no-airbag claim does not end the inquiry. We must determine whether we may infer congressional intent to pre-empt common law passive-restraint claims under the principles of implied pre-emption. Ford contends that the Safety Act and FMVSS 208 impliedly pre-empt Marrs's action because the possibility of common law liability "would substantially frustrate all of the purposes of the Safety Act and FMVSS 208." Ford argues that a state law airbag standard would interfere with federal efforts to reduce highway deaths and injuries, deprive manufacturers of the flexibility incorporated in federal safety standards, and conflict with the federal goal of uniformity of automobile safety standards.

Marrs asserts that a common law products liability claim does not prevent Ford from complying with FMVSS 208, nor does it preclude Ford from exercising any of its options under the standard. Marrs argues that because FMVSS 208 provides alternatives, it does not exculpate the manufacturer from liability for failing to select one of the other, possibly better options.

The Supreme Court has recognized the regulatory effect of damages awards:

> [R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.

*San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). With respect to a claim that a vehicle is defective because it lacks a passenger-side airbag, it is obvious that an award of damages will have a pronounced effect on the manufacturer's future conduct. *See Wood v. General Motors Corp.,* 865 F.2d 395, 410 (1st Cir.1988), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990). We conclude that Congress' purposes, as revealed in the Safety Act and its legislative history, plainly *imply* a preemptive intent. The language in the savings clause refuses to exempt persons from liability under common law because of compliance with a safety standard. However, this language does not reflect Congress' intent to avoid preemption of those defective design actions that would have the effect of creating a state safety standard in direct conflict with an existing FMVSS. *Id.* at 413.

The Marrs's claim alleging that the absence of a passenger-side airbag rendered the vehicle unreasonably dangerous would, if upheld, clearly "stand as an obstacle" to the regulatory scheme of the Act. *See Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). A state common law action sustaining the theory that a vehicle was defective because it lacked a passenger-side airbag would create a state safety standard related to the same aspect of performance of FMVSS 208. *See Cipollone,* — U.S. at ——, 112 S.Ct. at 2620–21. Such an action is impliedly pre-empted because it would effectively circumvent section 1392(d)'s prohibition of nonidentical state standards covering the same aspect of performance as a federal safety standard. *See Taylor,* 875 F.2d at 827; *Wood,* 865 F.2d at 412.

Marrs's products liability action, if successful, would stand as an obstacle to Congress' chosen method of increasing motor vehicle safety. *See International Paper Co. v. Ouellette,* 479 U.S. 481, 493, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987). Although the Safety Act does not expressly pre-empt Marrs's no-airbag claim, the Act impliedly pre-empts it. A no-airbag action presents an "actual conflict" with the Act, specifically because it "stands as an obstacle" to Congress' determination that safety is best served by having uniform national standards, flexible options for manufacturers, and gradual change for the consumer. *See* 49 Fed.Reg. 29,000, 29,001, 28,997 (1984); *see also Taylor,* 875 F.2d at 826–27; *Wood,* 865 F.2d at 412–13.

## C. *The Effective Date of FMVSS 208*

█ In response, Marrs contends that if the Safety Act and FMVSS 208 impliedly pre-empt state tort law no-airbag claims, the pre-emption applies only to 1987 and later model year vehicles. Marrs argues that Ford manufactured and sold the Taurus before the 1984 version of FMVSS 208's airbag requirement took effect. According to Marrs, the 1984 version of FMVSS 208 requires manufacturers to install passive restraints in their automobiles, phased in over model years 1987–1990. Marrs asserts that the policies and purposes underlying the promulgation of the 1984 version of FMVSS 208 about airbags, which is applicable to 1987 and later models, are not frustrated by a tort claim involving a 1986 automobile. We disagree.

The current version of FMVSS 208 expressly states that it became effective on August 16, 1984. *See* 49 Fed.Reg. 28,962 (1984). FMVSS 208 was in effect when Ford manufactured and sold the 1986 Taurus. Further, FMVSS 208 explicitly deals with automobiles manufactured during the 1986 model year. The 1984 version of FMVSS 208 expressly authorizes vehicles made in 1986 to use either manual safety belts or passive restraints. Marrs's no-airbag claim would effectively eliminate this option and impose on Ford a state tort law duty to install airbags in cars made in

the 1986 model year. Marrs's products liability action creates an "actual conflict" with the Safety Act. *See Taylor*, 875 F.2d at 827; *Wood*, 865 F.2d at 412. Federal law impliedly pre-empts Marrs's no-airbag claim.

We affirm the trial court's judgment.