**AFFIRM; and Opinion Filed February 2, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01377-CV

### VRIDE, INC., F/K/A VPSI, INC., Appellant
### V.
### FORD MOTOR CO., Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-11247**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Stoddart
Opinion by Justice Lang-Miers

This is an appeal from a summary judgment and involves a determination of whether the underlying lawsuit was a "products liability action" for purposes of statutory indemnity under Chapter 82 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 82.001–.008 (West 2011).

Appellant vRide, Inc. sued Appellee Ford Motor Co. for indemnity under Chapter 82 for damages that vRide paid to James Cernosek II and his wife to settle a lawsuit the Cernoseks filed against vRide after Cernosek was injured in a Ford van leased by vRide. vRide contended that the Cernoseks' lawsuit was a products liability action and it was entitled to indemnity from Ford. Although Ford contended the Cernoseks' lawsuit did not allege a products liability action against vRide, Ford offered to defend and indemnify vRide under certain conditions. vRide rejected Ford's offer, settled with the Cernoseks, and filed this lawsuit against Ford seeking indemnity.

Ford and vRide filed competing motions for summary judgment on threshold issues, including whether the Cernoseks' petition alleged a products liability action. The court granted Ford's motion and denied vRide's motion without stating the ground for its ruling. vRide appeals the granting of Ford's motion and the denial of its own and argues that we should reverse and render judgment that Ford owed a duty of indemnity to vRide. Because we conclude that the trial court did not err, we affirm the trial court's judgment.

BACKGROUND

vRide is a vanpool provider and leased a Ford E-350 van to the Bell Helicopter employee ride-share program. Cernosek, a Bell Helicopter employee, was the front-seat passenger in the van when it was struck by a drunk driver. Although Cernosek was wearing his seatbelt, he was partially ejected from the van "and sustained serious and blinding injuries."

Cernosek and his wife sued the drunk driver and Ford and settled with both. A few months later, the Cernoseks sued vRide, alleging in paragraphs 14, 15, and 16 that:

14. [vRide] promised that it put "Safety First" and that its vehicles provide "Safe, Reliable Transportation." These assertions and/or representations are untrue.

15. Aside from the false statements of [vRide], [vRide's] negligent acts and/or omissions include, but are not limited to, one [or] more of the following:

(a) [vRide] failed to purchase and/or furnish vehicles with side curtain or side canopy airbag systems;

(b) [vRide] failed to purchase a vehicle with all state of the art safety systems;

(c) [vRide] failed to purchase a vehicle with the most technologically advanced occupant safety systems available; and/or

(d) [vRide] knew, or should have known, that its vehicles would be involved in rollover accidents yet furnished no rollover curtains.

–2–

16. The foregoing acts and/or omissions of [vRide] were a producing and/or proximate cause of Plaintiffs' injuries and damages.[1]

vRide sought indemnity from Ford under Chapter 82 of the Texas Civil Practice and Remedies Code governing a manufacturer's duty to indemnify a seller for products liability. *Id*. Chapter 82 states that "[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." *Id*. § 82.002(a) (West 2011). Chapter 82 defines a "products liability action" as

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

*Id*. § 82.001(2). vRide and Ford disputed whether the Cernoseks' petition alleged a products liability action, and each filed a motion for summary judgment on this threshold issue.[2]

**vRide's Motion for Summary Judgment**

vRide argued in its motion that the Cernoseks' allegations "fit within the statute's expansive definition of 'products liability action.'" vRide compared the Cernoseks' allegations against it to the allegations they made against Ford and argued that many of the claims "were all

---

[1] The Cernoseks also alleged in paragraphs 17 through 19:

17. In the alternative and/or in addition to the other counts listed herein, Plaintiffs bring an action for fraud.

18. Defendant made material and/or false representations or statements knowing they were false.

19. Defendant's false representations directly and proximately caused injury to [sic] and damages.

In a footnote in its motion for summary judgment, vRide stated that the allegations in paragraphs 17 and 18 of the Cernoseks' third amended petition "are unclear but presumably based on the same purported misrepresentation alleged in Paragraph 14. . . . As such, these allegations would also independently constitute a 'products liability action.'" vRide does not address paragraphs 17 through 19 on appeal.

[2] The parties also moved for summary judgment on the threshold issues of whether i) the settlement agreement between Ford and the Cernoseks released vRide and eliminated Ford's duty to defend and indemnify vRide, and ii) Ford's offer to defend and indemnify vRide complied with Chapter 82.

–3–

based on the same alleged defects in the Ford van."[3] vRide argued that it did not matter that the Cernoseks' allegations against it were "disguised under misrepresentation, fraud or negligence theories." For example, vRide contended that the Cernoseks could not allege "that vRide misrepresented providing 'Safe, Reliable Transportation' without also alleging that the van was unsafe and therefore defective." And it contended that the Cernoseks' negligence allegations "necessarily included allegations of a defective product" by alleging the absence of safety systems. vRide also contended that because the Cernoseks' claims rely on defective product allegations and the same injuries were alleged in both lawsuits, "it must follow that the identical injuries . . . were caused by the same alleged defects (i.e. through the alleged omission of safety features . . .)."

**Ford's Motion for Summary Judgment**

Ford argued in its motion, among other things, that the Cernoseks did not allege a products liability action against vRide because the petition did not mention the terms "product," "defect," "product liability action," "unreasonably dangerous," manufacturing, marketing, or design defect, "safer alternative design," lack of warnings, or similar terms that usually are associated with a products liability claim. Ford also argued that it was improper to consider the Cernoseks' allegations in the lawsuit against Ford in determining whether the Cernoseks' allegations against vRide asserted a products liability action. And it contended that vRide's use of phrases such as "'disguised' product claims" and "necessarily includes" supports Ford's argument that the Cernoseks' allegations did not assert a products liability action against vRide.

The trial court granted Ford's motion and denied vRide's motion.

---

[3] In the lawsuit against Ford, the Cernoseks alleged that the van was defective and not crashworthy.

STANDARD OF REVIEW

The purpose of the summary-judgment rule is to provide a method of summarily terminating a case when it clearly appears that no genuine issue of fact remains and only a question of law is involved. *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 631–32 (Tex. App.—Dallas 2000, pet. denied). Here, the facts are undisputed, and the competing summary-judgment motions present the threshold issue of whether Chapter 82 applies to the case. When cross-motions for summary judgment deal with the application of a statute to undisputed facts, we may determine the question presented as a matter of law. *Gramercy Ins. Co., Inc. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 363 (Tex. App.—Dallas 2001, pet. denied). And when the summary judgment does not state the ground for the court's ruling, we must affirm if any of the theories presented to the trial court and preserved for appellate review is meritorious. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

APPLICABLE LAW

The purpose of Chapter 82 is to protect innocent sellers by assigning responsibility for the burden of products-liability litigation to the product's manufacturer. *Petroleum Solutions v. Head*, 454 S.W.3d 482, 494 (Tex. 2014). When a petition alleges that a manufacturer's product is defective, an innocent seller who suffers loss is protected under the indemnity provisions of Chapter 82.[4] *Id.*

Whether the plaintiff has asserted a products liability action so as to trigger the duty to indemnify is determined from the allegations in the plaintiff's petition. *Id.* at 492 (citing *Gen.*

---

[4] Section 82.003(a)(5) states that a nonmanufacturing seller is not liable for harm caused by the product unless it is shown that

    (A) the seller made an express factual representation about an aspect of the product;
    (B) the representation was incorrect;
    (C) the claimant relied on the representation in obtaining or using the product; and
    (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(5).

*Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006)). The duty is triggered by allegations of a defect in the manufacturer's product. *Id.* (citing *Hudiburg*, 199 S.W.3d at 256).

Chapter 82 does not define "defective product." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.001. The Supreme Court of Texas has defined it to mean "a product unreasonably dangerous because of a defect in marketing, design, or manufacturing." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381–82 (Tex. 1995). A manufacturing-defect claim alleges that the finished product deviated, in terms of its construction or quality, from the specifications or planned output in a manner that rendered the product unreasonably dangerous. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41–42 (Tex. 2007) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997)). A design-defect claim alleges that there was a safer alternative design that in reasonable probability "would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility." TEX. CIV. PRAC. & REM. CODE ANN. § 82.005; *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006). And a marketing-defect claim alleges a failure to warn of a product's potential dangers when there was a duty to warn. *Grinnell*, 951 S.W.2d at 426.

## DISCUSSION

vRide contends on appeal that the Cernoseks' petition "is a target-rich environment" of allegations of a defective product—the Ford van—and if one of those allegations is based on a claimed defective product, the lawsuit falls within the definition of a products liability action under Chapter 82.

**vRide's Arguments Concerning the Cernoseks' Misrepresentation Claims**

We begin with vRide's arguments about the allegations in paragraph 14 of the Cernoseks' petition. The Cernoseks alleged that vRide falsely "promised that it put 'Safety First' and that its vehicles provide 'Safe, Reliable Transportation.'" vRide contends that proof of these allegations depends on proof that the product, the Ford van, was defective. vRide argues that the Cernoseks would have to show that the Ford van was unsafe and unreliable to prove that vRide's promise to provide "safe, reliable transportation" was false. vRide contends that "[a] claim that a product is 'unsafe' sound[s] in either negligence or strict products liability" and both are products liability actions. vRide also argues that the Cernoseks cannot prove that vRide's promise that it put "Safety First" was false without proving that the van was "unsafe (and therefore defective) in some respect." It argues that if the claim is that the injury was caused by the unsafe product, it is a products liability action.

Ford acknowledges that "whether a particular suit constitutes a 'products liability action' turns on whether the claimant alleged damages caused by a defective product, irrespective of the legal theory alleged." It argues, however, that "the allegations made against vRide do not amount to claims that the vehicle itself was defective, but rather they are claims of vRide's own negligent actions, misrepresentation, and fraud regarding vRide's consideration of safety features when selecting vehicles to provide to its customers." Ford also acknowledges that no "magic words" are required by the statute to be included in the petition, but points out that the Cernoseks' "Petition contains no allegation that the vehicle contained a defect, was unreasonably dangerous, presented an unreasonable risk of harm, or the like." It argues that a claim is not a products liability claim merely because it refers to a product and contends that "the allegations focus on what vRide promised and on its failure to fulfill its promises."

Ford cites *Martin Product Sales, LLC v. Bominflot Bunker Oil Corp.*, No. 14-13-00003-CV, 2014 WL 3051227, at *2–3 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.), to support its argument that while no "magic words" are required, there must be allegations of a defective product. The Houston 14th Court of Appeals analyzed the petition in the underlying lawsuit involved in that case and noted the absence of words such as "defective" or "unreasonably dangerous" and the lack of identification of any defect in marketing, design, or manufacturing. *Id.* at *3. The court concluded that, as a result, the petition did not "show as a matter of law that the loss arose from a product liability action." *Id.*

vRide also cites several cases, both federal and state, to support its arguments that this is a products liability action. In one of those cases, *Hassell v. Mo. Pac. Ry. Co.*, 880 S.W.2d 39 (Tex. App.—Tyler 1994, writ denied), the plaintiff was a railway worker who developed a hearing impairment in his work with the railroad. *Id.* at 41. He sued the railroad and two manufacturers of railway equipment alleging the equipment was "unsafe" and caused his hearing loss. *Id.* It was clear that the plaintiff's lawsuit involved an allegation of unsafe equipment that he claimed caused his damages. *Id.* But there was no similar allegation in the Cernoseks' petition that the Ford van was unsafe or unreliable; the allegations were directed at vRide's representations about its vehicles in general.

vRide also contends that the Cernoseks' allegations are similar to those in *Gill v. Michelin North America, Inc.*, 3 F. Supp. 3d 579, 583–84 (W.D. Tex. 2013). In that case, the plaintiffs sued Michelin for damages sustained when an allegedly defective tire exploded. Michelin removed the lawsuit to federal court, and Gill filed a motion for leave to add the seller of the truck as a defendant. *Id.* at 581. Gill also moved to remand the lawsuit to state court because if he was allowed to add the seller, a non-diverse defendant, it would defeat the federal court's jurisdiction. *Id.* In the motion for leave, Gill alleged that the seller "made express factual

representations that the truck at issue, with the tire in question, was a good vehicle and could be used in a manner that Plaintiffs was [sic] intending for its use." *Id.* at 584. It was undisputed in that case that the plaintiffs alleged their damages were caused by a defective component of the truck, the tire, and the seller's alleged representations concerning the product thereby fell within the definition of a products liability action. *See id.* Instead, the question in *Gill* was whether the plaintiff's purpose for adding the nonmanufacturing seller as a defendant was to defeat federal jurisdiction. *Id.* at 583–84. This required the court to look at the theory under which Gill sued the seller and determine whether it stated a cognizable claim. *Id.* Gill contended that the allegations against the seller fell within one of the exceptions to the nonliability of a nonmanufacturing seller found in section 82.003(a). *Id.* at 584. Unlike in *Gill*, however, the dispute here is whether the Cernoseks' petition alleged a products liability action in the first instance, not whether one of the exceptions to the nonliability of a nonmanufacturing seller applies.

vRide also argues that the Cernoseks' allegations are "substantively indistinguishable" from the allegations in *In re Yamaha Motor Corp. Rhino ATV Products Liability Litigation*, No. 3:09-MD-2016-JBC, 2009 WL 939279 (W.D. Ky. Apr. 6 2009), where the court said the claims fell within the Chapter 82 definition of a products liability action. In that case, a woman was injured when the Yamaha Rhino in which she was riding rolled over. *Id.* at \*1. She sued the manufacturer of the Rhino alleging design and manufacturing defects. *Id.* She also sued the sports center that sold her the Rhino alleging that the salesperson made false representations about its safety when he told her it was "safer than a four wheeler." *Id.* at \*3. As in the *Gill* case, it was undisputed that the plaintiff in *Yamaha* alleged a products liability action, and the issue was whether the plaintiff stated a claim that fell within one of the exceptions to the nonliability of a nonmanufacturing seller. *Id.* at 3–4. And as we stated with regard to the *Gill* case, the issue

here is whether the Cernoseks alleged a products liability action in the first instance, not whether one of the exceptions applies.

In the lawsuit against vRide, the Cernoseks did not allege that vRide made representations specifically about the Ford van. Instead, they alleged generally that vRide misrepresented the presence of safety features on the vehicles it provides in its lease programs and promised that its vehicles had certain safety features when they did not. The Cernoseks did not allege that the Ford van was defective without those safety features. We conclude that the Cernoseks' misrepresentation claims did not allege a products liability action.

**vRide's Arguments Concerning Negligence Claims**

vRide also argues that the allegations in paragraph 15 of the Cernoseks' petition alleged a products liability action. In that paragraph, which we quoted earlier, the Cernoseks alleged that vRide was negligent by failing to purchase vehicles with certain safety features for its lease programs. vRide argues that these allegations "are more than sufficient to provide fair notice" that the Cernoseks were asserting a products liability action, regardless of the legal theory. vRide contends that the "logical interpretation" of these allegations is that the Cernoseks' injuries were caused by a defective product, the Ford van, because it did not have those safety features. And it argues that "[c]ourts have had little difficulty in concluding that these types of vehicle faults" are products liability actions, citing for support *Garcia v. Nissan Motor Co.*, No. M-05-59, 2006 WL 869944 (S.D. Tex. Mar. 30, 2006), and *Benavides v. Chrysler Group LLC*, No. 7:14-CV-518, 2014 WL 5507716 (S.D. Tex. Oct. 9, 2014). Again, we do not find these cases persuasive.

In *Garcia*, the plaintiff sued Nissan and the company that sold him an Altima for damages his minor son sustained in an automobile accident. 2006 WL 869944, at *1. The plaintiff claimed the Altima was defective because it did not have electronic stability control, was not crashworthy in foreseeable side-impact collisions, and did not have a side-curtain airbag,

among other things. *Id.* at *2. The essence of the allegations in *Garcia* was that the vehicle was defective without those features. *See id.* The allegations of a defective product were sufficient to bring the lawsuit within Chapter 82. *See id.* at *2–3. The *Benavides* case also involved allegations of a defective vehicle, specifically that a 2002 Dodge Ram pickup was defective in design and manufacture that made it unsafe in rollover incidents, and that a safer alternative design existed that would have prevented or significantly reduced the rollover and injury to the plaintiff. 2014 WL 5507716, at *1. Unlike the plaintiffs in *Garcia* and *Benavides*, however, the Cernoseks did not allege that the Ford van was defective because it did not have the various safety systems as allegedly represented by vRide. We conclude that the Cernoseks' negligence claims did not allege a products liability action.

**vRide's General Arguments**

vRide also contends that the Cernoseks' allegations are "quintessential 'products liability actions' even under [a] narrower common-law definition of that term." Citing *Marrs v. Ford Motor Co.*, 852 S.W.2d 570, 577–78 (Tex. App.—Dallas 1993, no writ), and *Caterpillar, Inc.*, 911 S.W.2d at 381, vRide argues that these types of "allegations are so common that they have their own legal moniker: 'no-airbag cases.'"

In *Marrs*, the plaintiff's wife, a passenger in a 1986 Ford Taurus, was killed in a head-on collision. 852 S.W.2d at 572. Her husband sued Ford alleging that the Taurus was unreasonably dangerous because it did not have a passenger-side airbag. *Id.* We characterized the claim as a common law products liability action; there was no question that the plaintiff contended the Taurus was defective. *Id.* The question on appeal, however, was not whether the claim was a products liability action, but whether federal safety regulations preempted the state law claim. *Id.* It was also undisputed in *Caterpillar* that the plaintiff asserted a products liability action. The plaintiff alleged that the front-end loader that injured him was unreasonably dangerous because it

was designed to allow the rollover protection system to be removed and because the defendants failed to warn him of the danger of operating the loader without the rollover protection. 911 S.W.2d at 380. Unlike the plaintiffs in *Marrs* and *Caterpillar*, however, the Cernoseks did not allege that the Ford van was unreasonably dangerous or defectively manufactured or designed because it lacked certain safety features.

In these cases upon which vRide relies, the parties did not dispute that the claimant alleged damages caused by a defective product and that, consequently, the lawsuits fell within the definition of "products liability action." Here, however, Ford and vRide do disagree about whether the Cernoseks' petition alleged a products liability action. In resolving that question, we have examined the statute defining "products liability action" and cases interpreting that definition. And although the definition has been interpreted broadly, *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 36 (Tex. 2016), it nevertheless requires allegations of damages that arose from personal injury, death, or property damage allegedly caused by a defective product, TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(2). *See Head*, 454 S.W.3d at 492; *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 317 (Tex. App.—Dallas 2004, pet. denied) ("The concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product.") (quoting *Rodriguez ex rel. Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 769 (Tex. App.—Corpus Christi 1997), *rev'd on other grounds*, 995 S.W.2d 661 (Tex. 1999)).

Allegations of a defective product include allegations that the product was unreasonably dangerous by manufacture or design, that there was a safer alternative design, or that the defendant failed to warn about the dangers of the product. *See, e.g.*, *Ledesma*, 242 S.W.3d at 41–43 (explaining manufacturing and design defects); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664–66 (Tex. 1999) (explaining defect of uncrashworthiness); *see*

*also Martin Prod. Sales*, 2014 WL 3051227, at \*3 (statute requires more than allegation that damage was caused by product; statute requires allegation that damage was caused by defective product, and petition that did not use words "defective," "unreasonably dangerous," or identify marketing, design, or manufacturing defect did not, as a matter of law, allege loss was caused by defective product).

The Cernoseks' petition did not allege that the Ford van was unreasonably dangerous, was defective by manufacture or design, was rendered defective because it lacked certain safety features, or was otherwise defective. Instead, the petition alleged that vRide represented its vehicles had certain safety features when in actuality the vehicles did not have those safety features and that vRide failed to furnish vehicles with those safety features. In short, the Cernoseks' petition did not contain allegations that the damages arose out of personal injury, death, or property damage allegedly caused by a defective product.

CONCLUSION

We conclude that the allegations in the Cernoseks' petition did not satisfy Chapter 82's definition of a products liability action. As a result, the trial court did not err by granting Ford's motion for summary judgment and denying vRide's motion. Because our resolution of this issue is dispositive of the appeal, we do not need to reach vRide's remaining issues. We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

151377F.P05

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VRIDE INC., F/K/A VPSI, INC., Appellant

No. 05-15-01377-CV      V.

FORD MOTOR CO., Appellee

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-11247.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Ford Motor Co. recover its costs of this appeal from
appellant vRide Inc., f/k/a VPSI, Inc.

Judgment entered this 2nd day of February, 2017.